IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PATRICK MILLER | : | |
| | : | |
| Plaintiff, | : | CASE NO. |
| | : | |
| v. | : | TRIAL BY JURY DEMANDED |
| | : | |
| NATIONAL RAILROAD | : | |
| PASSENGER CORPORATION | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

## THE PARTIES

1. Plaintiff, Patrick Miller ("Plaintiff") was at all times relevant to this complaint a resident of Philadelphia, Pennsylvania.

2. Defendant, National Railroad Passenger Corporation ("Defendant") ("Amtrak") National Railroad Passenger Corporation. Amtrak is the US' intercity passenger rail provider and its only high-speed rail operator. Plaintiff worked at Defendant's 15 South Poplar Street, Wilmington, DE 19801 location.

## JURISDICTION

3. The jurisdiction of this court is invoked pursuant to the Family Medical Leave Act (FMLA), the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101; and Section 504 of the Rehabilitation Act of 1973 ("Section 504")

1

29 U.S.C. § 701 *et seq.* As such, the Court has original jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1337.

## VENUE

4. The unlawful employment practices alleged herein were committed within the State of Delaware. Accordingly, venue lies in the United States District Court for the District of Delaware under 42 U.S.C. §1339(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Prior to the filing of this action, the plaintiff timely filed a Charge of Discrimination with the State of Delaware Department of Labor and Equal Employment Opportunity Commission on February 17, 2021.

6. On or about May 21, 221, the EEOC issued Plaintiff a "Right to Sue Notice" which was received by Plaintiff on or about May 23, 2021. *EEOC Right to Sue Notice* attached as Exhibit 1.

## FACTS

7. Miller is a 35-year-old male who was hired as a block operator at AMTRAK's Philadelphia location on October 15, 2007.

8. By all accounts, Miller was a hardworking and devoted employee with impeccable integrity during his employment with Amtrak.

9. In 2009, Miller was promoted to a train dispatcher.

10. At that same time, Miller was diagnosed with diabetes which caused him impairments that substantially limit major life activities.

11. On May 8, 2013, Miller applied for and was approved for FMLA leave related to his diabetes.

12. Miller also took continuous or intermittent FMLA in 2014, 2015, 2016, 2017, 2018, 2019 and 2020 for posterior lumbar decompression and diabetes.

13. In addition, Miller took leave as an accommodation due to him being a diabetic.

14. In April 2020, as a result of the COVID pandemic, Amtrak was running a reduced schedule and issued a policy that anyone with a pre-existing medical condition could stay home and be added to an emergency extra list.

15. The emergency extra list was only to be used in case of an emergency to avoid overtime.

16. In May 2020, Amtrak requested Plaintiff return to work in the office, which was approximately 3-4 weeks prior to anyone else on the emergency extra list.

17. Upon returning to work in May 2020, Miller was under the proverbial microscope by management who began scrutinizing Miller's actions in a

discriminatory fashion as opposed to individuals who did not take FMLA leave or had a known disability.

18. Upon returning from work, Plaintiff expressed concern to his Respondent Management Official (RMO) Christian Field regarding him working with his disability.

19. Rather than engaging in the mandatory interactive process, RMO Field instructed Plaintiff to take the issue up with his union representative.

20. Immediately after Plaintiff complained about returning to the office with his disability, Amtrak and RMO Field reported that Plaintiff was under investigation for using his desk phone at work for a personal call.

21. It was customary for Amtrak train dispatchers to make occasional phone calls from their desk.

22. In the past, Amtrak train dispatchers never received discipline for making a personal phone call from the desk phone.

23. Such conduct does not violate Amtrak's Northeast Operating Rules Advisory Committee ("NORAC") Operating Rule T.

24. In July 2020, Amtrak informed Plaintiff he was terminated from his employment.

25. Based on the temporal proximity, Amtrak management retaliated against Plaintiff for his past FMLA leave and complaining about returning to work with his known disability.

26. For example, during the well know Train 89 accident on April 3, 2016. Dispatcher Michael Franklin was on personal phone call during the accident and was cleared of any wrongdoing.

## COUNT I-DISABILITY DISCRIMINATION- DELAWARE PERSONS WITH DISABILITIES ACT AND AMERICANS WITH DISABILITIES ACT- FAILURE TO ACCOMODATE AND TERMINATION OF EMPLOYMENT

27. Paragraphs 1 through 26 are hereby realleged and incorporated herein by reference as if fully set forth herein.

28. Such acts as described above by Defendant, Amtrak, its agents and employees, constitute unlawful disability discrimination against Plaintiff in violation of 19 Del. Code §711 et. seq and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et. seq.

29. The Delaware Persons with Disabilities Act and the Americans with Disabilities Act provides that an individual is entitled to a reasonable accommodation if he meets the definition of a qualified individual with a disability.

30. If there is a reasonable accommodation that will enable a person to the essential functions of a job, the employer is obligated to provide it, unless it would

5

impose an undue hardship on the operation of the business.

31. An employee does not have to specifically request a "reasonable accommodation," but must only let the employer know that some adjustment or change is needed to a do a job because of limitations caused by a disability.

32. A request for a modified work schedule, particularly when requested in advance and with specific parameters, represent a reasonable accommodation for employees with disabilities *Ward v. Massachusetts Health Research Inst. Inc*, 209 F.3d 29 (1st Cir. 2000) 35.

33. People with disabilities may require modified work schedules for a number of reasons related to their disability, such as medical treatment related to the disability.

34. Rather than initiate an interactive discussion regarding a reasonable accommodation, Amtrak terminated Plaintiff in violation of the Delaware Persons with Disabilities Act and the ADA.

35. In addition, Defendant unlawfully terminated Miller because of his disability.

36. As a direct and proximate result of Defendant's unlawful discrimination, in the nature of disability discrimination, by and through its agents and employees, Plaintiff Patrick Miller has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish,

emotional distress, physical manifestation of anxiety and potential lost wages and lost benefits.

## COUNT II- RETALIATION

37. Paragraphs 1 through 36 are hereby realleged and incorporated herein by reference as if full set forth herein

38. Such acts as described above by Defendant, Amtrak, its agents and employees constitute unlawful retaliation against Plaintiff for her prior ADA requests.

39. As a direct and proximate result of Defendant's unlawful retaliation, by and through its agents and employees, Plaintiff, Patrick Miller, has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and lost wages and lost benefits.

## COUNT II
## FMLA RETALIATION

40. Paragraphs 1 through 39 are hereby realleged and incorporated herein by reference as if full set forth herein.

41. Miller also took continuous or intermittent FMLA in 2014, 2015, 2016, 2017, 2018, 2019 and 2020 for posterior lumbar decompression and diabetes.

42. Upon returning to the office in May 2020, Plaintiff Miller suffered an adverse employment decision when he was terminated by Amtrak.

43. The adverse employment decision was causally related to his FMLA leave since it occurred immediately after his FMLA leave and prior to his return to work.

44. Miller is entitled to equitable relief (including reinstatement and promotion), economic damages (including lost wages and benefits), liquidated damages, and interest.

45. In addition, Miller will be also entitled to attorneys' fees, expert witness fees and other costs. 29 U.S.C. §2617(a)(3); 29 C.F.R. §400(c)

**WHEREFORE**, Plaintiff requests this Honorable Court enter a judgment in his favor and against the Defendants as follows:

a. Declare the conduct engaged in by the defendant to be in violation of the plaintiff's statutory rights.

b. Order the rehiring of the plaintiff at a level which is commensurate with his time and experience previously held by the plaintiff, or in lieu thereof granting the plaintiff front pay to compensate him for pecuniary losses he will suffer as a result of defendant's wrongful conduct.

    c.    Award the plaintiff back pay compensation for his pecuniary losses from the date of the wrongful conduct described herein until the date of any judgment.

    d.    Award the plaintiff sufficient funds to compensate him for his losses, pain and mental suffering, which cannot otherwise be compensated by equitable relief.

    e.    Award the plaintiff compensatory such as front pay and punitive damages not otherwise specified.

    f.    Award the plaintiff any and all other liquidated damages, which would make the plaintiff "whole".

    g.    Award the plaintiff attorney fees, the costs of this action, pre-judgment and post judgment interest, and

    h.    Such other and further relief as this Court deems just and proper.

**THE POLIQUIN FIRM, LLC**

/s/ Ronald G. Poliquin
Ronald G. Poliquin, Esq.
DE Bar I.D. No. 4447
1475 S. Governors Ave.
Dover, DE 19904
(302) 702-5501
*Attorney for Plaintiff Patrick Miller*

Dated: August 19, 2021